# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. CR21-4085-LTS |
| vs. | |
| MARLO HARPER, | **ORDER ON REPORT AND RECOMMENDATION** |
| Defendant. | |

This matter is before me on a Report and Recommendation (R&R) in which the Honorable Kelly K.E. Mahoney, Chief United States Magistrate Judge, recommends that I deny defendant Marlo Harper's motion (Doc. 37) to dismiss the indictment. *See* Doc. 39. Harper has filed objections (Doc. 40) and the Government has filed a response (Doc. 41).

## I. BACKGROUND

On November 4, 2021, the grand jury returned an indictment (Doc. 6) against Harper alleging one count of possession of a firearm by a felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). On May 11, 2022, the grand jury returned a superseding indictment (Doc. 27) to add a second count of possession of a firearm by a felon and unlawful drug user in violation of 18 U.S.C. §§ 922(g)(1) and (3) and § 924(a)(2). On August 12, 2022, Harper filed a motion (Doc. 37) to dismiss the indictment based on: (1) his right to bear arms under the Second Amendment of the United States Constitution, (2) his religious rights under the Free Exercise Clause of the First Amendment of the United States Constitution and (3) the Religious Freedom Restoration Act (RFRA). The Government filed a resistance (Doc. 38). Judge Mahoney issued her R&R (Doc. 39) on September 9, 2022. Trial is scheduled for November 28, 2022.

## II. APPLICABLE STANDARDS

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

### III. THE R&R

Judge Mahoney first addressed the timeliness of Harper's motion and whether there was good cause to extend the pretrial motions deadline, which had expired in mid-January (more than six months before Harper filed his motion). Harper acknowledged that his motion was untimely but argued there was good cause to extend the deadline because he had raised these arguments with prior counsel, who refused to raise them in a motion and was ultimately discharged due to a "breakdown of communication." Docs. 31, 32. Current counsel was appointed in mid-May, *see* Doc. 32, and did not file the motion to dismiss until mid-August. Doc. 37. Harper purportedly raised the issue with him at their second meeting, the date of which is unspecified. Harper argued that good cause also existed because a case he relies on, *New York State Rifle & Pistol Association v. Bruen*, 142 S. Ct. 2111 (2022), was decided on June 23, 2022.

Judge Mahoney found good cause did not exist on either ground. With regard to *Bruen*, she noted it did not overrule prior Second Amendment cases in which the Court stated that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill." *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008); *McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010) ("We repeat those assurances here."). Judge Mahoney also found that *Bruen* does not explain Harper's failure to raise his RFRA argument earlier in time, noting that current counsel waited almost three months after his appointment to file the motion to dismiss and almost two months after the opinion in *Bruen* was issued.

Even though the motion could be denied as untimely, Judge Mahoney concluded it also failed on its merits. Under *Bruen*, laws banning the possession of firearms are invalid unless "consistent with this Nation's historical tradition of firearm regulation." 142 S. Ct. at 2126. Harper argues (1) "there is a not a consistent historical basis to categorically bar felons" from possessing firearms and (2) his prior felony convictions – for assault in the second degree under Minnesota law and theft under Texas law – "are not the types of offenses that are historically analogous to the types of groups that would

3

use firearms against the government." Doc. 39 at 3 (quoting Doc. 37). Judge Mahoney noted that before *Bruen*, the Eighth Circuit repeatedly denied Second Amendment challenges to § 922(g) and, post-*Bruen*, at least two district courts have recognized "the historical conclusion that dangerous or unvirtuous citizens" could be barred from owning guns. *Id.* (citing *United States v. Daniels*, No. 1:22-cr-58-RHWR-1, 2022 WL 2654232, at *3-4 (S.D. Miss. July 8, 2022) and *United States v. Jackson*, No. CR-22-59-D, 2022 WL 3582504, at *3 (W.D. Okla. Aug. 19, 2022)). Judge Mahoney also examined pre-*Bruen* decisions from other courts of appeals that held "the right to bear arms was tied to the concept of virtuous citizenry, and therefore the Government could disarm 'unvirtuous citizens'" (such as felons and drug users). *Id.* at 4 (citing *Binderup v. Att'y Gen. United States of Am.*, 836 F.3d 336, 348 (3d Cir. 2016)). Judge Mahoney noted that Harper is alleged to be a drug user and violent felon and, because *Bruen* did not overrule established precedent upholding bans on drug users and violent felons from possessing firearms, she recommends rejecting his Second Amendment challenge.

Judge Mahoney also recommends rejecting Harper's challenge based on the Free Exercise Clause of the First Amendment and RFRA. Harper argues that he is a Muslim who practices "Sharia Law and its adherence to armed self-defense (including the possession of a firearm.)." Doc. 37; *see also* Doc. 37-1 (Harper's "nonphoto religious identification card" authorizing the "Muslim bearer" of the card to carry a firearm). Judge Mahoney concluded that under RFRA, even if Harper has a sincerely held religious belief in carrying a firearm for self-defense, the prohibition against drug users carrying firearms is not a "substantial burden" on his right to exercise his religion because he does not contend that using illegal controlled substances is part of his religion. As to his status as a felon, she found that being criminally prosecuted for carrying a firearm based on that status posed a substantial burden.

Judge Mahoney then analyzed whether prosecution under § 922(g)(1) imposes the least restrictive means of promoting public safety and preventing crime. She considered *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006), in

4

which the Supreme Court rejected the Government's argument that the Controlled Substances Act (CSA) is a closed regulatory system with no exceptions under RFRA and must be "uniformly applied." In *O Centro*, the Court noted that a statutory peyote exception to the CSA for tribes undercut the Government's argument that uniform application was necessary and concluded the lower courts did not err in determining the Government failed to demonstrate a compelling interest in barring a religious sect from drinking their hallucinogenic sacramental tea. *Id.* at 439.

Here, Judge Mahoney concluded the Government's interest in protecting the public could not be accomplished without prosecuting Harper because a proposed alternative would need to accommodate both the religious exercise and the Government's compelling interest. Doc. 39 at 6 (citing *United States v. Grady*, 18 F.4th 1275, 1287 (11th Cir. 2021), *cert. denied*, 142 S. Ct. 2871 (2022)). She noted Harper was seeking an accommodation "allowing him to carry a firearm to use in self-defense, despite his status as a violent felon, without being subject to other federal firearm regulations (and likely obtained via the black market) and while using marijuana, driving, and violating traffic laws (he went straight through an intersection from the turn lane)." *Id.* at 7 (citing Doc. 2) (footnote omitted).

Judge Mahoney distinguished *Cheema v. Thompson*, 67 F.3d 883, 884-85 (9th Cir. 1995), in which students challenged a school's ban on all weapons, including knives, from school grounds, arguing that it violated a central tenet of their religion to wear a ceremonial knife at all times. The school cited its interest in maintaining campus safety but the court found it failed to prove the lack of a less restrictive alternative. On remand, the district court determined that a less restrictive alternative would be to allow the students to carry a knife with a dull blade sewed tightly into a sheath and worn underneath their clothing. The school would also conduct periodic inspections to ensure the requirements were being met and if the student violated the conditions, they would lose the right to carry the knife. *Id.* at 886. The Ninth Circuit rejected the school district's challenge to this alternative on appeal. *Id.* Judge Mahoney noted Harper did not argue

5

that his religious beliefs require him to carry a weapon for ceremonial purposes but for self-defense. He also did not possess it in the controlled environment of a school, subject to periodic checks to ensure the weapon could not be readily used. Doc. 39 at 8. Rather, he was found with a firearm in his car while driving and using marijuana. Because the Government's interest in protecting the public could not be accomplished without prosecuting Harper, she recommends rejecting Harper's First Amendment and RFRA challenge.

## IV.   ANALYSIS

Harper makes factual and legal objections to the R&R. Factually, he objects to the finding of lack of good cause based on the appointment of new counsel and to the finding that he used marijuana and drove dangerously. Legally, he objects to the conclusion that there was no good cause for the untimeliness of the motion and argues that Judge Mahoney failed to differentiate between the two charges and to consider the proper religious exercise. He contends that his religious exercise bars prosecution under RFRA and the First Amendment.

Harper does not object to the R&R's determination that the charges do not violate his Second Amendment rights under the Constitution. I have reviewed that portion of the R&R for clear error and find none.

### A.   *Factual Objections*
#### 1.   *Lack of Good Cause*

Harper argues there is good cause for the motion's untimeliness based on the failure of his initial counsel to raise his First Amendment claims. He contends this is different than good cause based on the appointment of new counsel that was discussed in *United States v. Dabney*, 42 F.4th 984, 989 (8th Cir. 2022), and relied on by the Government.

In *Dabney*, the defendant moved for the appointment of new counsel after the district court denied his suppression motion. Seven months after the appointment of new counsel he filed a second suppression motion, which was denied as untimely. *Dabney*, 42 F.4th at 989. When defendant sought leave to file it out of time, the court denied the motion, concluding that he failed to show good cause for his delay. *Id*. On appeal, defendant argued that the lack of time with his new lawyer constituted good cause. *Id*. The Eighth Circuit held appointment of new counsel was not good cause for filing an untimely motion, but even if it were, good cause did not exist because his second motion was filed seven months after he was appointed new counsel and two months before trial, despite receiving a seven-month trial continuance.

Here, Judge Mahoney concluded:

> Although Harper suggests he raised his concerns to both prior and current counsel in a timely manner, current counsel waited almost three months after his appointment to file the motion to dismiss (and almost two months after the issuance of *Bruen*), despite a continuance motion in mid-July indicating counsel had fully assessed the case materials.

Doc. 39 at 2-3. Judge Mahoney did not rely on *Dabney* to conclude that the appointment of new counsel was not good cause for filing an untimely motion. Rather, she relied on counsel's delay in filing the motion after his appointment. There was no need to include a separate factual finding as to whether there was good cause based on the actions of prior counsel. Prior counsel's refusal to file the motion has no bearing on whether current counsel timely filed the motion because that finding is based on the date of the appointment rather than the motions deadline. Counsel cannot use prior counsel's actions to excuse his own. Thus, even assuming a mere change of counsel could constitute good cause for filing an untimely motion (which it does not), this objection must be overruled.

### 2. *Marijuana and Dangerous Driving*

Harper objects to any factual finding that he was using marijuana and driving dangerously as a basis to deny his as-applied First Amendment challenge. He notes these

7

allegations are from the initial complaint (Doc. 2) and that he was not able to cross-examine those statements because Judge Mahoney did not hold an evidentiary hearing. Judge Mahoney noted that in considering whether lesser restrictive alternatives exist as part of a RFRA defense to a criminal prosecution, "the proposed alternative need[s] to accommodate both the religious exercise practiced in [the particular] case . . . and simultaneously achieve the government's compelling interests." Doc. 39 at 6 (quoting *Grady*, 18 F.4th at 1287). She stated:

> Under the facts here, Harper seeks an accommodation allowing him to carry a firearm to use in self-defense, despite his status as a violent felon, without being subject to other federal firearm regulations (and likely obtained via the black market) and while using marijuana, driving, and violating traffic laws (he went straight through an intersection from the turn lane). Granting an exception to Harper would not protect the Government's compelling interest in public safety.

*Id.* at 6-7 (citing Doc. 2) (footnotes omitted).

Judge Mahoney did not make a factual finding that Harper actually used marijuana or violated traffic laws but considered them as the allegations that form part of the basis for the criminal prosecution. This was appropriate because she had to consider whether there was a less restrictive alternative to prosecution that would allow Harper to possess a firearm for his stated religious purpose (self-defense) under those alleged circumstances (using marijuana and violating traffic laws) while also achieving the Government's compelling interest in public safety and the uniform enforcement of gun control laws. No factual finding was necessary (and would be improper). Judge Mahoney appropriately considered whether Harper should be permitted to possess a firearm pursuant to RFRA under the alleged circumstances, which form the basis for the Government's prosecution. I find no error with Judge Mahoney's reference to these allegations in her analysis. This objection is overruled.

## B. Legal Objections

### 1. Good Cause

Harper argues the R&R did not delineate the *Bruen* change of law issue from the First Amendment/RFRA claim. He contends while good cause may not exist based on the change of law in *Bruen*, it does exist based on the failures of prior counsel to raise the First Amendment issue. He states (for the first time) that the motion to dismiss was filed within 30 days of Harper alerting his current counsel to the First Amendment/RFRA claims. Harper asked his prior counsel to raise these claims and counsel refused, which led, in part to the change in counsel. He clarifies that his current counsel did not wait three months, but 30 days after Harper first alerted him to the issue.

This is a factual objection rather than a legal one. Judge Mahoney found current counsel was appointed in mid-May and acknowledged that Harper first raised these issues to him during their second meeting. Doc. 39 at 1. She also found that current counsel did not file the motion to dismiss until almost three months after his appointment.

Harper did not provide any information in his motion regarding the time between when he alerted his new counsel to these issues and when counsel filed the motion. He stated only "[f]ollowing a second meeting with Defendant, counsel was advised by Defendant of his position regarding the indictment and the Constitutional violations for his possession of a firearm." Doc. 37 at 1. *See also* Doc. 37 at 5 ("Current counsel was apprised of this failure during a second meeting and after counsel accessed and obtained discovery. This Motion is brought as soon as practical from the date Defendant alerted current counsel to the defect . . . ."). In his objections, he states that 30 days lapsed between when counsel was made aware and when he filed the motion. This would have been helpful information to include in his original motion. Instead, counsel merely relied on an ambiguous reference to a "second meeting." There was nothing in the record for Judge Mahoney to determine when that second meeting occurred and how soon thereafter counsel filed the motion.

9

The Eighth Circuit has recognized that a party may not make arguments in his objections to a magistrate judge's report when those arguments have not been presented to the magistrate judge nor addressed in the magistrate judge's report and recommendation. *See Roberts v. Apfel*, 222 F.3d 466, 470 (8th Cir. 2000). *See also Reciprocal Exch. v. Noland*, 542 F.2d 462, 464 (8th Cir. 1976) (noting the "purpose of referring cases to a magistrate for recommended disposition would be contravened if parties were allowed to present only selected issues to the magistrate, reserving their full panoply of contentions for the trial court."); *Hammann v. 1-800 Ideas.com, Inc.*, 455 F. Supp. 2d 942, 947-48 (D. Minn. 2022) ("A party cannot, in his objections to an R&R, raise arguments that were not clearly presented to the magistrate judge."). Because Harper did not disclose the time between when current counsel was notified of this issue by defendant and when the motion was filed, I cannot consider this new information in reviewing the R&R. In any event, even if good cause existed based on this new information, Harper's motion fails on the merits, as explained below. This objection is overruled.

### 2. *Exercise of Sharia Law*

Harper argues Judge Mahoney "failed to delineate between his RFRA claim for purely religious purposes and the alleged use of marijuana." Doc. 40 at 3. He contends she failed to specifically find that his exercise of Sharia law, despite his felon status and independently from the user-in-possession allegation, prevents prosecution. He argues Judge Mahoney failed to "analyze his independent grounds for religious practice of self-defense by comingling the objected to allegations of use of a controlled substance." *Id.*

Harper's arguments are somewhat unclear, but I interpret them to be arguing that his religious exercise must be considered independently from his status as a felon or unlawful user of a controlled substance. Of course, the Government is not prosecuting Harper for practicing Sharia law. Rather, it is prosecuting him for possessing a firearm based on his status as a felon and unlawful user of a controlled substance and Harper is

10

asserting his practice of Sharia law as a defense. I agree there would be no basis for prosecuting Harper independent of his statuses as a felon or unlawful user of a controlled substance, as section 922(g) does not prohibit individuals who practice Sharia law from possessing firearms. However, the Government is prosecuting Harper based on his statuses as a felon and unlawful user of a controlled substance, meaning I must consider those statuses in determining whether there is a less restrictive alternative to prosecution that would further the Government's compelling interest in public safety and crime prevention through the uniform enforcement of gun control laws. In other words, I must consider whether an accommodation should be made to prosecution under § 922(g)(1) and (3) based on Harper's religious belief that he is entitled to carry a firearm for self-defense that would still further the Government's compelling interest.

Whether Harper could lawfully possess a firearm in the absence of his statuses as a felon and unlawful user of a controlled substance based on his religion is immaterial. This objection is overruled.

### 3. *Religious Exercise for Self-Defense Bars Prosecution*

Finally, Harper asserts a general objection to the legal finding that his religious exercise for self-defense is not a complete bar to prosecution and that his RFRA rights "exist facially and as-applied for as no less restrictive means could achieve a compelling interest by the Government." Doc. 40 at 3. He argues that his alleged possession of a firearm for self-defense in an automobile exists particularly as a religious minority in the Northern District of Iowa.

"Congress enacted RFRA in order to provide greater protection for religious exercise than is available under the First Amendment." *Holt v. Hobbs*, 574 U.S. 352, 357 (2015). RFRA provides that "Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability," unless the Government "demonstrates that application of the burden to the person (1) is in furtherance of a compelling governmental interest and (2) is the least restrictive means

of furthering that compelling governmental interest." *Id.* (quoting 42 U.S.C. §§ 2000bb-1(a), (b). "RFRA requires the Government to demonstrate that the compelling interest test is satisfied through application of the challenged law 'to the person' – the particular claimant whose sincere exercise of religion is being substantially burdened." *O Centro*, 546 U.S. at 430-31.

Judge Mahoney found that the prohibition against drug users carrying firearms was not a "substantial burden" on Harper's right to exercise his religion because he did not contend that using illegal controlled substances was part of his religion. Doc. 39 at 5. As for his status as a felon, she noted this was immutable and found that that being criminally prosecuted for carrying a firearm based on that status poses a substantial burden. *Id.* She then considered whether § 922(g)(1) imposes the least restrictive means of achieving the Government's interest in promoting public safety and preventing crime. *Id.* She reasoned that the Government's interest could not be accomplished without prosecuting Harper because he sought an accommodation that would allow him to carry a firearm for self-defense, despite his status as a violent felon. *Id.* at 6. She stated that granting the exception to Harper would not protect the Government's compelling interest in public safety. *Id.*

Like Judge Mahoney, I will assume without deciding that Harper's practice of possessing a firearm for self-defense was a sincerely held religious belief and that prosecution substantially burdened his exercise of religion. Therefore, it is the Government's burden to prove that prosecution of Harper is in furtherance of a compelling government interest and that it is the least restrictive means of furthering that interest. The Government argues "the gun control regime of the United States is a compelling governmental interest and can only be maintained by a systematic and uniform application." Doc. 38 at 6.

Courts have recognized that the uniform enforcement of laws is a compelling interest in some, but not all cases. As Judge Mahoney noted, the Supreme Court rejected a uniform application of the law argument in *O Centro*, noting that it relied solely on

12

slippery-slope concerns (if we allow one accommodation, we will have to allow other accommodations). It distinguished other cases in which a uniform application argument was accepted, noting that "the Government can demonstrate a compelling interest in uniform application of a particular program by offering evidence that granting the requested religious accommodations would seriously compromise its ability to administer the program." *O Centro*, 546 U.S. at 435. The Court added: "We do not doubt that there may be instances in which a need for uniformity precludes the recognition of exceptions to generally applicable laws under RFRA." *Id.* at 436. It found that those circumstances were not present in *O Centro* "given the longstanding exemption from the Controlled Substances Act for religious use of peyote, and the fact that the very reason Congress enacted RFRA was to respond to a decision denying a claimed right to sacramental use of a controlled substance." *Id.* at 436-37. It stated the Government also had not offered evidence demonstrating that granting an exemption would cause the kind of administrative harm recognized as a compelling interest. *Id.*

Here, the Government cited cases recognizing the importance of uniform application and enforcement of immigration, drug distribution and drug use laws. Doc. 38 at 6-7. It has not cited a case recognizing that import as to gun laws, nor have I been able to locate such as a case. In *United States v. Epstein*, 91 F. Supp. 3d 573 (D.N.J. 2015), the court considered a RFRA defense to kidnapping charges. It distinguished *O Centro* by noting that the Government's stated interest in that case was to protect the health of those religious users while in *Epstein* it was to protect the health and safety of individuals who were victims of the alleged kidnapping. *Epstein*, 91 F. Supp. 3d at 584. The court also emphasized that based on the charges at issue, the Government unquestionably had a compelling interest in applying kidnapping laws uniformly, noting "[i]t is beyond cavil that 'the duty to prosecute persons who commit serious crimes is part and parcel of the government's paramount responsibility for the general safety and welfare of all its citizens.'" *Id.* at 585 (quoting *In re Grand Jury Empaneling of Special Grand Jury*, 171 F.3d 826, 832 (3d Cir. 1999) (internal quotations omitted)). It

13

concluded the Government had shown a compelling interest in the uniform application of kidnapping and conspiracy laws and no exception could be made for prosecuting the defendants. *Id.* at 585-86.

While the *Epstein* court emphasized that the crimes at issue were crimes of violence, similar reasoning applies to prosecutions under § 922(g)(1), as they primarily seek to prevent harm to others. *See Schall v. Martin*, 467 U.S. 253, 264 (1984) ("The 'legitimate and compelling state interest' in protecting the community from crime cannot be doubted.'"); *United States v. Salerno*, 481 U.S. 739, 750 (1987) (preventing crime is a compelling interest); *United States v. Anderson*, 854 F.3d 1033, 1036 (8th Cir. 2017) (emphasizing that unlike in *O Centro* the Government was not prosecuting Anderson for engaging in a "circumscribed, sacramental use" of heroin, but for distributing heroin to others for non-religious uses). The Government has demonstrated a compelling interest in public safety and preventing crime through the uniform enforcement of gun control laws.

With regard to whether Harper's prosecution is the least restrictive means of furthering the Government's compelling interest, courts have recognized that "the existence of government-sanctioned exceptions to a scheme purporting to be the least restrictive one possible can show that other, less-restrictive alternatives could be envisaged." *United States v. Hardman*, 622 F. Supp. 2d 1129, 1131 (D. Utah 2009). For instance, in *O Centro*, the Court noted there was a "well-established" peyote exception to the CSA. *See* 546 U.S. at 434. This undercut the Government's argument that prosecution was the least restrictive means of uniformly applying the CSA because it was already inconsistently applying it with some identified exceptions. *Id.* at 433. I am not aware of any exceptions under § 922(g)(1) or (3). Here, the Government cannot uniformly apply its gun control laws for public safety and the prevention of crime under § 922(g)(1) or (3) without prosecuting Harper. As such, I find it is the least restrictive means to furthering the Government's compelling interest.

14

Case 5:21-cr-04085-LTS-KEM   Document 44   Filed 09/30/22   Page 14 of 16

In sum, I agree with Judge Mahoney that there is no less restrictive means to achieve the Government's compelling interest in uniformly applying gun laws for public safety than prosecuting Harper. The charges at issue – being a felon and unlawful user of a controlled substance in possession of a firearm under § 922(g)(1) and (3) – are intended to protect the safety of the public through uniform enforcement, *see Epstein*, 91 F. Supp. 3d at 584, and can be distinguished from cases in which enforcement of a law was aimed at protecting the health and safety of a particular group of individuals who sought a religious accommodation. *See O Centro*, 546 U.S. at 430 (in which the Government argued that Schedule I substances under the CSA had no currently accepted medical use in treatment and lacked accepted safety for use under medical supervision); *United States v. Christie*, 825 F.3d 1048, 1057 (9th Cir. 2016) (distinguishing *O Centro* because in a case involving prosecution for the *distribution* of marijuana the Government had "a compelling interest in mitigating the risk that cannabis from the Ministry will be diverted to recreational users"). There are no statutory exceptions to possession of a firearm as a prohibited person under § 922(g)(1) and (3) and prosecution is the least restrictive means to achieve the Government's interest in uniform enforcement of gun control laws for public safety and crime prevention. Harper's objection that his religious exercise for self-defense is a complete bar to prosecution is overruled.

## V. CONCLUSION

For the reasons stated herein:

1. Harper's objections (Doc. 40) to the R&R (Doc. 39) are **overruled**;

2. I accept the R&R (Doc. 39) without modification, *see* 28 U.S.C. § 636(b)(1);

3. Pursuant to Judge Mahoney's recommendation, Harper's motion (Doc. 37) to dismiss the indictment is **denied**.

**IT IS SO ORDERED.**

**DATED** this 30th day of September, 2022.

_____
Leonard T. Strand, Chief Judge